NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **ADRZEJ IWANICKI,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 11-01792 (CCC)** |
| **v.** | : | |
| | : | **OPINION** |
| **BAY STATE MILLING COMPANY;** | : | |
| **BAKERY, CONFECTIONARY,** | : | |
| **TOBACCO WORKERS, AND GRAIN** | : | |
| **MILLERS INTERNATIONAL UNION;** | : | |
| **JOHN DOE(S) 1,2,3; AND ABC CORP.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**CECCHI**, District Judge.

I.      **INTRODUCTION**

      This matter comes before the Court by way of two motions to dismiss Plaintiff's First Amended Verified Complaint ("Complaint"). The first motion was filed by Defendant Bay State Milling Company ("Bay State") pursuant to Federal Rule of Civil Procedure 12(b)(6). The second motion was filed by Defendant Bakery, Confectionary, Tobacco Workers and Grain Millers International Union Local 53 ("Union") pursuant to Federal Rule of Civil Procedure 12(c). The Court has considered the submissions made in support of and in opposition to the instant motions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motions to dismiss are granted. Plaintiff is granted thirty (30) days in which to file a Second Amended Complaint which cures the pleading deficiencies in those claims discussed below.

1

## II.   <u>BACKGROUND</u>

Plaintiff Andrzej Iwanicki ("Iwanicki" or "Plaintiff") began working as an Assistant Miller at the Bay State Milling Company in July 1990.  (Compl. ¶ 6).  He had been a member of the Union since October 1990.  (*Id*. ¶ 3 & Ex. A).  Plaintiff alleges that on or about December 10, 2008, he was struck on the top of his head and on his left arm with a mechanical boom while performing his work duties.  (*Id*. ¶ 3).  Plaintiff claims that as a result of this accident, he suffered injuries and had to receive medical treatment.  (*Id*. ¶ 4 & Ex. C).  The day after the accident, Bay State completed an investigation report that contained a description of the incident and the names of witnesses.  (*Id*. Ex. B).  Plaintiff did not file a workers' compensation claim following the accident.  He claims Bay State, along with the Union, "commenced a course of conduct and pattern of behavior towards [P]laintiff designed to inhibit him from filing his rightful claim for compensation."  (*Id*. ¶ 5).  He further claims that Defendants retaliated against him and "stifled and intimidated" him after his accident.  (*Id*.).

Plaintiff also alleges that on May 18, 2010, December 2, 2010, and December 31, 2010, defendants Bay State and the Union, "through their dominion and control over plaintiff as an employee and a union member," filed "false and concocted and bogus fabricated and meritless and baseless and petty complaints against Plaintiff."  (*Id*. ¶¶ 6-7).  He further claims that Defendants subjected him to "verbal reprimands and unpleasant body language and gestures" after the accident.  (*Id*. ¶ 7).  According to Plaintiff's coworker or supervisor, on May 17, 2010, Plaintiff failed to follow instructions and showed a lack of respect for his supervisor.  (*See* E-mail from Greg Beyrle, May 18, 2010, Compl. Ex. D).  Plaintiff received a verbal warning after this confrontation and he was informed that this type of conduct could lead to disciplinary actions or termination in the future.  (*Id*.).  On December 2, 2010, Plaintiff received a five-day

suspension for "harassment and failure to deal with [his] emotions in a respectful manner." (Letter from Mike Walsh, Dec. 2, 2010, Compl. Ex. D).   On December 31, 2010, Plaintiff apparently committed a safety violation.   (*See* Letter from Ken Distler, Dec. 31, 2010, Compl. Ex. D).   When he was informed of his mistake and given another suspension, he allegedly responded in a vindictive rather than remorseful manner.   (*See* Letter from "Josh," Dec. 31, 2010, Compl. Ex. D).   On January 14, 2011,[1] Bay State terminated Plaintiff's employment for violating a Bay State procedure.   (Compl. ¶ 10; *see also* Letter from Mike Walsh, Jan. 14, 2011, Compl. Ex. E).

Plaintiff claims that Defendants reprimanded, suspended, and ultimately terminated him because he is a Polish immigrant and because he is handicapped as a result of his injuries.   (*Id.* ¶ 47).   Plaintiff also alleges that that Defendants' actions were intended to:   (1) deter him from seeking medical attention; (2) discourage him from filing a Workers' Compensation claim prior to the expiration of the statute of limitations on December 10, 2010; and (3) avoid "significant legal exposure and responsibility and liability for the highly dangerous and potentially life threatening accident that occurred to Plaintiff."   (*Id.* ¶¶ 5, 8).

## III.   BAY STATE'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

### A. Legal Standard

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).   In evaluating the sufficiency of a complaint, the Court

---

[1] According to Defendant Bay Street's Brief, Plaintiff's employment was terminated on December 10, 2010.   (Def.'s Br. 1).

3

must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion [s]' devoid of 'further factual enhancement.'" *Iqbal*,129 S. Ct. at 1949.

The burden of proof for showing that no claim has been stated is on the moving party. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). During a court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). In general, the Federal Rules of Civil Procedure should be construed liberally so as to encourage ruling on the merits instead of technicalities: "This liberality is expressed throughout the Federal Rules of Civil Procedure and is enshrined in a long and distinguished history . . . . An inadvertant mistake in pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced." *Lundy v. Adamar of New Jersey*, 34 F.3d 1173, 1186 (3d Cir. 1994). Further, courts will not dismiss for failure to state a claim merely because the complaint miscategorizes legal theories or does not point to an appropriate statute or law to raise a claim for relief. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 909 n. 10 (1990).

## B. DISCUSSION

### 1.  Count One- Whistleblower Claims

Count One of Plaintiff's Complaint alleges that Defendants committed retaliatory actions in anticipation of him filing his Workers' Compensation claim.  (Compl. ¶¶ 10-12).  He claims that he harbored "a deep rooted fear that his livelihood would be taken away if he spoke out against the defendant's policies . . . or if [he] . . . reported or objected to any activity." (*Id.* ¶ 11). He asserts that Defendants' actions are in violation of N.J.S.A. 26:2H-5.21 and the Conscientious Employer Protection Act (CEPA), N.J.S.A. 34:19-3.  (Compl. ¶ 12).  However, in his Opposition to Bay State's Motion to Dismiss, Plaintiff voluntarily dismissed these claims, stating that he mistakenly cited N.J.S.A. 26:2H-5.21, which is inapplicable to his case; furthermore, Plaintiff's CEPA claim is superseded by his retaliation claims.  (Pl. Opp'n. 6).  Therefore, Plaintiff's claims in count one are dismissed.

### 2.  Counts Two and Four- Breach of Contract Claims

Plaintiff's Amended Complaint contains two contract-related claims.  In Count Two, he alleges that Defendants breached the implied covenant of good faith and fair dealing.  (Compl. ¶¶ 19-20).  He claims that Defendants "have not complied with the binding duties and procedures mandated by the manuals and documentation creating binding duties and obligations on defendants in the case of termination procedures." (Compl. ¶ 20).  In Count Four, Plaintiff claims that Defendants are liable for breach of contract because they violated the job security provisions of the "manuals and documentation." (Compl. ¶¶ 30-31).

Bay State makes three arguments as to why these two claims should be dismissed.  The Court will address each argument in turn.  First, it argues that these contract claims are preempted by Plaintiff's CEPA claim in Count One.  (Bay State Br. 7).  Bay State argues that

5

because Plaintiff has chosen to proceed with a CEPA claim, he has "waived his right to allege non-CEPA claims based on the same underlying facts." (Bay State Br. 5). Because Plaintiff has voluntarily dismissed his CEPA claims, this argument is moot. (*See* Pl. Opp'n. 6).

Second, Bay State argues that Plaintiff failed to identify which "manuals and documentation" were allegedly breached. (Bay State Br. 7). Furthermore, it argues that Plaintiff did not claim that these manuals and documents were a valid contract. (*Id.*). To state a claim for breach of contract under New Jersey law, the plaintiff must allege facts demonstrating "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the [plaintiff] performed [his] own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,* 210 F. Supp. 2d 552, 561 (D.N.J. 2002). The plaintiff must also specifically identify the portions of the contract that were allegedly breached. *Skypala v. Mortgage Electronic Registration Systems, Inc.,* 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim where "the Complaint does not identify the provisions Plaintiff asserts were breached"); *see also Loceria Colombiana, S.A. v. Zrike Company, Inc.*, No. 10-5329, 2011 WL 735715, at *3, 4-5 (D.N.J. Feb. 22, 2011) (dismissing breach of contract and good faith and fair dealing claims when defendant failed to identify the contract that was allegedly breached).

All contracts include an implied covenant that the parties to the contract will act in good faith. *See Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 420 (1997); *see also Wade v. Kessler Inst.,* 343 N.J. Super. 338, 345 (App. Div. 2001) ("The obligation to perform in good faith exists in every contract including where the contract is terminable at will."). The parties must have a valid contract in order for there to be a breach of an implied covenant of good faith and fair dealing. *Morelli v. County of Hudson*, 10-5493, 2011 WL 843952, at *14 (D.N.J. March 7, 2011) (finding that a non-party to an employment contract cannot breach the implied covenant

6

of good faith and fair dealing); *see also Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 434 (App. Div. 2002) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.").

Termination clauses in a company's policy manual, including those that require certain procedures prior to termination, may be contractually enforceable. *Woolley v. Hofmann-La Roche, Inc.,* 99 N.J. 284, 297 (N.J. 1985), *modified on other grounds,* 101 N.J. 10, 499 A.2d 515 (N.J. 1985). An implied contract between an employer and employee based on an employment manual which alters an employee's at-will status is referred to as a "*Woolley* contract." *Wade v. Kessler Inst.,* 172 N.J. 327, 340 (N.J. 2002). Several courts have held that a *Woolley* contract contains an implied covenant of good faith and fair dealing like any other employment agreement. *See id.* at 340-41.

Here, Plaintiff alleges that the "[employment] manuals and documentation" create "binding duties and obligations on defendants." (Compl. ¶¶ 20, 30-31). In his Opposition to Bay State's motion to dismiss, Plaintiff claims that he "laid out what happened to him and his causes of action in minute particularity." (Pl. Opp'n. 6). He further states that "[i]t is hard to imagine that there is any way to provide more detail than has already been provided on this cause of action." (Pl. Opp'n. 7). However, Plaintiff has not identified the contract that was allegedly breached or the provisions of the contract that were allegedly breached. Without more information, Plaintiff's allegations are insufficient to sustain claims for breach of the implied covenant of good faith and fair dealing or breach of contract.

Finally, Bay State argues that because Plaintiff is a member of the Union, "his allegations involve the interpretation of a collective bargaining agreement, and are therefore preempted by §

301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a)."  (Bay State Br. 8) (internal citation omitted).  Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization . . .
> may be brought in any district court of the United States.

29 U.S.C. § 185(a).  "[W]hen resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor contract law." *Briones v. Bon Secours Health Sys.*, 69 Fed. Appx. 530, 534 (3d Cir. 2003); s*ee also Allis-Chalmers v. Lueck,* 471 U.S. 202, 211 (1985) ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation."); *Griesmann v. Chemical Leaman Tank Lines, Inc.,* 776 F.2d 66 (3d Cir.1985) ("It is well recognized that individual employees can bring suit against their employers in federal court for breach of a contract between an employer and a union.").

Here, Plaintiff is a member of the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union Local 53.  (Compl. ¶ 3).  While he has asserted contract law claims under state law, it is not clear that these claims require analysis of the collective bargaining agreement, as he has not identified the manuals or contracts Defendants allegedly violated. Therefore, the Court grants Defendant Bay State's motion to dismiss Plaintiff's breach of implied covenant of good faith and fair dealing and breach of contract claims.

### 3.  Counts Three and Five- Retaliation and Wrongful Discharge Claims

Count Three of Plaintiff's Complaint alleges that Bay State discriminated against him because he "claimed or attempted to claim workmen's compensation benefits" in violation of

N.J. Stat. 34:15-39.1.  (*See* Compl. ¶ 26).  Count Five also alleges that Bay State retaliated against him because he was "seeking to exercise certain established rights."  (Compl. ¶ 35). Plaintiff claims that Defendants violated the "United States and New Jersey Constitutions, federal and state laws and administrative rules, regulations and decisions, the common law, specific judicial decisions, and in certain cases professional code of ethics."  (Compl. ¶ 36). Plaintiff further alleges that Defendant violated N.J.S.A. 40A:14-151.  (Compl. ¶ 39).

> Pursuant to N.J.S.A. 34:15-39.1:
>
> It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer...

"[T]he policy of the retaliatory discrimination act [is] so firmly grounded in public interest as to require assiduous protection and enforcement."  *Lally v. Copygraphics,* 173 N.J. Super. 162, 179 (App. Div. 1980) (holding that both administrative and judicial remedies are available for retaliatory discharge).  The N.J. Supreme Court also stated that "[t]he statutory declaration of the illegality of such a discharge underscores its wrongful and tortious character for which redress should be available."  *Lally v. Copygraphics*, 85 N.J. 668, 670 (1981).  In *Lally,* the plaintiff had sustained minor injuries in a work-related accident. *Lally,* 173 N.J. Super. at 166-67.  When plaintiff presented her employer with the bills from her medical treatment, she claimed that her employer advised her that if she continued to make "this kind of trouble" by attempting to obtain workers' compensation benefits, she would be discharged.  *Id.*  She persisted with her claims and she was subsequently discharged.  *Id.*

Unlike the plaintiff in *Lally*, Plaintiff here asserts that he did not file a workers' compensation claim "because he feared retaliation." (Pl. Opp'n. 6).  He states that he waited the

entire statutory period to file his claim and he was terminated when the statutory period expired. (Pl. Opp'n. 6). Plaintiff further asserts that he was so intimidated by Defendants that he was unable to file his valid claim. (*Id.*). Plaintiff has admitted, however, that he has not filed a workers' compensation claim and he has not alleged any facts that indicate that he attempted to file a worker's compensation claim. (Pl. Opp'n. 6). Furthermore, Plaintiff does not assert any facts that indicate that his injury or potential workers' compensation claim factored into Bay State's decision to discharge him. According to the Complaint, he was discharged on or about January 14, 2011, more than two years after his on-the-job accident. (Compl. ¶ 10); *see also Galante v. Sandoz, Inc.*, 192 N.J. Super. 403 (Law Div. 1983), aff'd by 196 N.J. Super. 568 (App. Div. 1984) (dismissing plaintiff's claim where the employer discharged the employee eight months after the employee filed a workers' compensation claim). Moreover, it appears from the Complaint that Plaintiff's termination was based on his violation of a workplace policy. (Compl. Ex. E). The Complaint further indicates that his suspensions and/or reprimands were based on well-documented reasons unrelated to Plaintiff's injury or potential workers' compensation claim. (Compl. Ex. E); *see also Galante v. Sandoz, Inc.*, 192 N.J. Super. 403 (Law Div. 1983), aff'd by 196 N.J. Super. 568 (App. Div. 1984) (dismissing Plaintiff's claim and finding that employee was discharged because his absences exceeded the number of absences permitted by his employer's absentee policy, although defendant claimed that some of those absences were related to his work related injury). Based on these findings, Defendant's motion to dismiss this claim is granted.

With regard to Count Five of the Complaint, it appears that Plaintiff has simply reiterated his retaliation claim as stated in Count Three. (Compl. ¶ 36). While Plaintiff cites to a multitude of additional sources of law, including the United States Constitution, he has not pled with

enough specificity to put the Defendant on notice of this claim.  Furthermore, Plaintiff alleges

that Defendant violated N.J.S.A. 40A:14-151 (Compl. ¶ 39), which states:

> Whenever any member or officer of a municipal police department or force shall
> be suspended or dismissed from his office, employment or position and said
> suspension or dismissal shall be judicially determined to be illegal, said member
> or officer shall be entitled to recover his salary from the date of such suspension
> or dismissal, provided a written application therefor shall be filed with the
> municipal clerk within [thirty] days after such judicial determination.

Because Plaintiff has not alleged that he is a police officer, this statute is inapplicable.

Defendant's motion to dismiss this claim is therefore granted.

### 4. Count Six- Hostile Work Environment

In Count Six of his Complaint, Plaintiff alleges that Bay State "engaged in a course of

conduct and pattern of behavior of harassing the Plaintiff in his place of employment . . . to the

point where the work environment became and continues to be hostile." (Compl. ¶ 42).  Plaintiff

claims that Defendants' actions violated the New Jersey Law Against Discrimination (NJLAD),

N.J.S.A. 10:5-1 to -42.  (Compl. ¶ 48).  The LAD prohibits discrimination "because of race,

creed, color, national origin, ancestry, age, sex, affectional or sexual orientation, marital status,

familial status, liability for service in the Armed Forces of the United States, or nationality."

N.J.S.A. 10:5-3.  In order to prevail on a claim for hostile work environment, the plaintiff must

show that "the complained of conduct (1) would not have occurred but for the employee's

[protected status]; (2) and it was severe or pervasive enough to make a (3) reasonable [person]

believe that (4) the conditions of employment are altered and the working environment is hostile

or abusive." *Lehmann v. Toys R Us, Inc.,* 132 N.J. 587, 603–04 (1993) (emphasis omitted).

"When evaluating whether conduct is sufficiently severe or pervasive to create a hostile

work environment, we focus on the 'harassing conduct . . . , not its effect on the plaintiff or the

work environment.'" *Cutler v. Dorn,* 196 N.J. 419, 431(2008) (quoting *Lehmann,* 132 N.J. at 606). The conduct must be such that it would "make a reasonable [person] believe that the conditions of employment are altered and [that the] working environment is hostile." *Id.* (quoting *Lehmann,* 132 N.J. at 604). The court must examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 432 (quoting *Green v. Jersey City Bd. of Educ.,* 177 N.J. 434, 447(2003)); *see also Meritor Sav. Bank. v. Vinson*, 477 U.S. 57, 67 (1980) (finding that plaintiff's allegations, "which include[d] not only pervasive harassment but also criminal conduct of the most serious nature—[were] plainly sufficient to state a claim for 'hostile environment'"); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (requiring plaintiff to show that his workplace "permeated with 'discriminatory intimidation, ridicule, and insult" that was so severe or pervasive that it altered the conditions of his employment). Therefore, "'simple teasing,' off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

Plaintiff fails to allege any specific offensive conduct by Bay State, much less "severe or pervasive" conduct. Instead, Plaintiff alleges generalized behavior without any other details. He claims that Defendants harassed him because he "does not speak English as his first language and is an immigrant from Poland and is handicapped because of his worker's compensation injuries." (Compl. ¶ 47). He further alleges that Defendants intimidated him, made meritless complaints against him, and subjected him to "unpleasant body language and gestures." (Compl. ¶¶ 6-7). Plaintiff does not allege any specific comments or any threatening conduct that was

directed at him.  Plaintiff offers exhibits, which document the disciplinary actions Bay State employees took against Plaintiff.  (*See* Compl. Exs. D, E).  Absent from these documents is any discussion regarding Plaintiff's nationality, his ability to speak English, or his injuries.  (Compl. Ex. D).  Without more information, Plaintiff's allegations are insufficient to sustain a hostile work environment claim.  *See Feeney v. Jefferies & Co.*, No. 09-2708, 2010 U.S. Dist. LEXIS 64033, at *16 (finding that plaintiff's allegation that his supervisor "repeatedly" made racial slurs related to his Irish ancestry was not enough to maintain a hostile work environment claim); *Doe v. Sizewise Rentals, LLC*, No. 09-3409, 2010 WL 4861138, at *6 (D.N.J. Nov. 22, 2010) (granting a motion to dismiss because plaintiff's general allegations of "harassment, backstabbing, depriving minority workers employment, . . . [and] falsifying evidence . . . for the purpose of termination, demotion, and reprimand" was not enough to sustain a hostile work environment claim).  Therefore, the Court grants Defendant Bay State's motion to dismiss Plaintiff's hostile work environment claim.

### 5. Counts Eight[2] and Nine[3] - Conspiracy

Count Eight of Plaintiff's Complaint alleges that Defendants "are members of a common plan or design to commit a tort upon Plaintiff."  (Compl. ¶ 57).  In Count Nine, Plaintiff claims that defendant "entered into an agreement to inflict a wrong or wrongs or injury to and against Plaintiff."[4]  (Compl. ¶ 64).

_____

[2] Count Seven of Plaintiff's Complaint pertains only to the Union Defendant.

[3] Bay State's Motion to Dismiss did not specifically mention Count Nine, but did discuss conspiracy, which is the basis for Plaintiff's claim in Count Nine.

[4] Plaintiff further alleges that Defendants' conduct is in violation of *Shackil v. Lederle Labs.*, 116 N.J. 155 (1989) and *LoBiondo v. Schwartz*, 199 N.J. 62 (2009).  (Compl. ¶¶ 60, 66).  In *Schackil*, plaintiffs filed products liability claims related to injuries that allegedly resulted from the use of

In order to state a civil conspiracy claim, a plaintiff must establish "(1) a combination of two or more persons; (2) a real agreement of confederation with a common design; (3) the existence of an unlawful purpose; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin, & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (denying defendants' motion to dismiss when the plaintiffs "alleged a number of overt acts committed by one or more of the conspirators in furtherance of the conspiracy"). "An agreement to commit a wrongful act does not, by itself, support a civil conspiracy claim. Instead, at least one of the conspirators must commit a tortious act in furtherance of the conspiracy." *D & D Assocs. v. Bd. Of Educ.*, No. Civ. 03-1026, 2007 WL 4554208, at * 29 (D.N.J. Dec. 21, 2007) (internal citations omitted). (granting defendants' motion for summary judgment when the plaintiff made "only the vague and conclusory allegation that the defendants entered into 'a real agreement' with the intent of depriving D & D of its property and destroying its business 'by unlawful means'").

In this case, Plaintiff has not asserted any basis for his conspiracy claim. In particular, he has not alleged any facts suggesting that one or more of the Defendants entered into an agreement to commit an unlawful act or engaged in any discussions that could be construed as an agreement. *See id.* He also does not provide any details indicating that any of the Defendants committed an unlawful act in furtherance of the alleged conspiracy, nor has he identified any "special" damages. *See Morganroth*, 331 F.3d at 414. Instead, the Plaintiff alleges that Defendants acted "jointly and severally" to discourage him from filing his workers'

---

defendants' vaccine and the court considered whether to adopt market-share liability. *Shackil*, 116 N.J. at 159-60. In *LoBiondo*, defendants filed counterclaims for malicious prosecution, and malicious use of process and the court considered whether to accept an advice-of-counsel defense. *LoBiondo*, 199 N.J. at 1012-14. While the court in *LoBiondo* briefly addresses the requirements for a civil conspiracy, the Court finds both of these cases to be wholly irrelevant to this matter.

14

compensation claim.  (Compl. ¶ 8).  This allegation fails to raise Plaintiff's right to relief above a speculative level.  *See Twombly*, 550 U.S. at 545.  Therefore, Bay State's motion to dismiss these claims is granted.

### 6. Count Ten- Intentional Infliction of Emotional Distress

Count Ten of Plaintiff's Complaint alleges that Bay State "directed extreme and or outrageous conduct toward Plaintiff intentionally and in a fashion to produce emotional distress and or recklessly in deliberate disregard of a high degree of probability that emotional distress will follow."  (Compl. ¶ 69).  "[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe."  *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 365 (1988).  First, a plaintiff must prove that the defendant intended "both to do the act and to produce the emotional distress."  *Id.*  Defendant will also be liable if he acted in "deliberate disregard of a high degree of probability that emotional distress will follow."  *Id.*  Second, the defendant's actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . and utterly intolerable in a civilized community."  *Id.* (quoting Restatement (Second) of Torts, § 46 comment d (1965) (Restatement)).  Third, defendant's actions must have been the proximate cause of plaintiff's emotional distress.  *Id.* Fourth, the emotional distress suffered by plaintiff must be "so severe that no reasonable man could be expected to endure it."  *Id.*

A court may dismiss if it cannot "imagine a set of facts that might demonstrate 'extreme and outrageous' conduct on the part of the [d]efendant[s]."  *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 348 (D.N.J. 2006) (granting a motion to dismiss an intentional infliction of emotional distress claim where plaintiff, a high school teacher, claimed that (1) the

principal stated at a faculty meeting that it was his goal to reduce the median age of the faculty; (2) he was terminated because of his age; and (3) he suffered humiliation, anxiety, emotional distress, and pain and suffering). In fact, courts have found that conduct or decisions made in the employment context rarely "rise to the level of outrageousness necessary to provide a basis for recovery for intentional infliction of emotional distress." *Hillburn v. Bayonne Parking Auth.*, No. 07-5211, 2009 U.S. Dist. LEXIS 6762, at * 32 (D.N.J. Jan. 29, 2009). Furthermore, "the termination of an employee, whatever the secret motive underlying it, is the kind of event that happens every day; such an act is not even a breach of modern-day business etiquette, much less an uncivilized barbarism. Quite a bit more . . . must accompany a firing if it is to be deemed 'outrageous.'" *Fletcher v. Wesley Medical Center,* 585 F. Supp. 1260, 1262 (D.Kan.1984) (finding that plaintiff's claim "boils down to nothing more than defendants having fired her, ostensibly for legitimate reasons, but actually because of her age"); *see also Borecki v. E. Int'l Mgmt. Corp.*, 694 F. Supp. 47, 61 (D.N.J. 1988) (finding that the termination of a sixty-one year old man, even if discriminatory, did not amount to outrageous conduct).

Here, Plaintiff has not alleged any conduct that might be considered "extreme or outrageous." Furthermore, he has not indicated that he suffered from distress "so severe that no reasonable man could be expected to endure it." *Buckley*, 544 A.2d at 863. He claims he "suffered severe losses and damages" as a result of Defendants' actions and requests lost damages and restoration of his employment. (Compl. ¶¶ 73-74). Furthermore, in response to Bay State's motion to dismiss, Plaintiff states that he has "painstakingly and in minute detail set forth his causes of action." (Pl. Opp'n. 7). Plaintiff did not, however, provide any additional facts to support a claim that Defendant's behavior was outrageous or that he suffered from any

severe distress.  Therefore, the Court grants Bay State's motion to dismiss Plaintiff's claim of intentional infliction of emotional distress.

In his Opposition, Plaintiff also claims that he has sufficiently stated a claim for negligent infliction of emotional distress, although this claim was not asserted in his original pleadings. (Pl. Opp'n. 7; Compl. ¶ 68).  "It is axiomatic that the complaint may not be amended by the briefs in opposition to the motion to dismiss." *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173 (3d Cir.1988) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)).  If Plaintiff wishes to add any additional claims, he should proceed in accordance with Federal Rule of Civil Procedure 15(a).  The Court will thus not consider Plaintiff's negligent infliction of emotional distress at this time.[5]

### 7.  Count Eleven- Unlawful Discrimination[6]

In Count Eleven of his Complaint, Plaintiff alleges that Defendants committed "unlawful discrimination and . . . unlawful employment practice[s] against [him] and that [D]efendants aided and abetted the same acts."  (Compl. ¶ 76).  Plaintiff claims that Defendants intimidated,

---

[5] Even if Plaintiff had included a claim for negligent infliction of emotional distress in his complaint, his claim would fail.  A Plaintiff may maintain an action for negligent infliction of emotional under two scenarios.  First, "[a] plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther,* 195 N.J. 91, 104 (2008).  Second, a plaintiff may satisfy the four elements set forth in *Portee v. Jafee,* 84 N.J. 88, 97, 101 (1980): "(1) the defendant's negligence caused the death of, or serious physical injury, to another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress."  Here, Iwanicki has not alleged any facts showing that he was placed "in reasonable fear of immediate personal injury." *See Jablonowska,* 195 N.J. at 104.  Furthermore, Plaintiff has not alleged any facts that would satisfy the elements set forth in *Portee.*

[6] Defendant Bay State did not move to dismiss Count Eleven in particular, but does request dismissal of all claims.

17

threatened, reprimanded, and terminated him because he is not a native English speaker, because he is Polish, and because he is handicapped. (Compl. ¶¶ 77-78). Plaintiff asserts that Defendants' actions violated the NJLAD. (Compl. ¶ 81).

First, the Court addresses Plaintiff's claims of discrimination due to his national origin and language. In order to assert a prima facie case of discrimination under the NJLAD, a plaintiff must show that: (1) he was a member of a protected group; (2) his job performance met the "employer's legitimate expectations;" (3) he was terminated; and (4) the employer replaced him or sought to replace him. *Zive v. Stanley Roberts, Inc.,* 182 N.J. 436, 867 A.2d 1133, 1141 (N.J. 2005); *Clowes v. Terminix Int'l, Inc.,* 109 N.J. 575, 538 A.2d 794, 805 (1988). Once a plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action." *Zive,* 867 A.2d at 1140. If the employer provides a legitimate, nondiscriminatory reason for the action, the burden then shifts back to the plaintiff to demonstrate that "the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." *Id.*

The Court finds that the Complaint fails to allege facts sufficient to constitute a plausible claim of "ancestral" discrimination under the NJLAD. First, the Complaint alleges that Plaintiff is of Polish origin and that English is not his first language. (Compl. ¶ 78). Based on this assertion, he is a member of a protected class under NJLAD. *See* N.J.S.A. § 10:5-12a; *Feeney v. Jefferies & Company, Inc.*, No. 09-2708, 2011 WL 5157373 (D.N.J. Oct. 28, 2011) (finding that plaintiff's Irish heritage made him a member of a protected class under NJLAD). Second, according to Plaintiff, he had a "long history of tireless and dutiful work for [D]efendant Bay State as a miller for over [twenty] consecutive years." (Compl. ¶ 6). Because a plaintiff need

18

only allege that he was *performing* his job prior to the termination, Plaintiff satisfies the second element of a prima facie case. *See Zive*, 867 A.2d at 1143 ("All that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination . . . to support the conclusion that plaintiff's claim of discrimination is plausible enough to warrant promotion to the next step."). Plaintiff has also established the third prong because Plaintiff's employment was terminated on or about January 14, 2011. (Compl. ¶ 10). Plaintiff has not, however, fulfilled the requirement under the fourth prong as he has failed to allege that Bay Stated replaced him or sought to replace him. *See Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215 at *7(D.N.J. Feb. 16, 2011) (plaintiff alleged that the employer replaced him with someone in his mid-twenties); *Feeney*, 2011 WL 5157373, at *5 (plaintiff alleged that he was ultimately replaced by a new employee). Therefore, because Plaintiff failed to allege facts sufficient to satisfy all four elements of a prima facie case of ancestral discrimination under the NJLAD, Bay State's motion to dismiss is granted.

In order to establish a prima facie case of discriminatory discharge on the basis of disability under the NJLAD, a plaintiff must show that: "(1) he is disabled or perceived to have a disability; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) he was fired; and (4) the employer sought someone else to perform the same work." *Muller v. Exxon Research & Eng'g. Co.*, 345 N.J. Super. 595, 786 A.2d 143, 148 (N.J. Super. Ct. App. Div. 2001) (citing *Clowes*, 538 A.2d at 805).

Plaintiff's claim of disability discrimination under the NJLAD fails because Plaintiff does not allege any facts indicating that he was disabled after his on the job accident. Moreover, the Complaint fails to allege what disability Plaintiff possessed due to the accident. Instead, Plaintiff

19

merely asserts that he "suffered injuries as a result of [the] accident . . . and received medical treatment both emergency and thereafter." (Compl. ¶ 4).  He alleges generally that Defendants "intimidated, threatened and or interfered with Plaintiff . . . because of his handicap and or because of his disability." (Compl. ¶¶ 77-78).

Moreover, Plaintiff's allegations fail to raise a reasonable inference that Defendants perceived him to have a disability.  *See Incorvati v. Best Buy Co.*, No. 10–1939, 2010 WL 4807062, at * (D.N.J. Nov. 16, 2010) (dismissing plaintiff's NJLAD perceived disability claim because frequent teasing about his age and the heart attack he suffered did not establish that defendant misperceived that plaintiff suffered from a substantially limiting impairment). Although the Complaint alleges that Defendants improperly terminated him, reprimanded him, and retaliated against him, it fails to allege that any of the employees who made these decisions believed he was disabled.  (*See* Compl. ¶¶ 77-78).  Therefore, because Plaintiff failed to allege facts that indicate he is disabled or that are sufficient to raise the inference that any of the Defendants believed that he was disabled, Plaintiff's NJLAD claim is dismissed.

## IV.     UNION'S MOTION TO DISMISS

The Court now turns to the Union's motion for judgment on the pleadings pursuant to Rule 12(c).  Because Plaintiff has failed to allege any facts indicating how the Union or any of its representatives harmed him, Plaintiff's Complaint as to the Union is dismissed.  A full recount of Plaintiff's claims is provided in Parts II and III, *supra*.

### A.  Count One- Whistleblower Claims

As discussed in Part III.A, *supra*, Plaintiff has voluntarily dismissed count one of his Complaint.  Therefore, this claim is dismissed.

**B.  Count Two- Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count Two, Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing.  (Compl.  ¶¶ 19-20).  He claims that Defendants "have not complied with the binding duties and procedures mandated by the manuals and documentation creating binding duties and obligations on defendants in the case of termination procedures." (Compl. ¶ 20).  It appears that the Plaintiff is referring to employment manuals and other documents related to his employment.  Because the Union was not Plaintiff's employer, this claim does not implicate the Union Defendant.[7]

**C.  Counts Three and Five- Retaliation and Wrongful Discharge**

In Counts Three and Five, Plaintiff claims that Defendants wrongfully discharged him in retaliation for attempting to file a worker's compensation claim.  (Compl. ¶¶ 23-27, 34-40).  The Union asserts that it was not the Plaintiff's employer and as such, it was not involved in the decision to terminate Plaintiff's employment.  (*See* Union Br. 4, 5).  The Court agrees with the Union Defendant and finds that in addition, Plaintiff has not alleged any facts suggesting, even at a speculative level, that the Union had any influence on Bay State's decision to terminate Iwanicki.  Therefore, these claims are dismissed as to the Union.

**D.  Count Four- Breach of Contract**

In Count Four, Plaintiff claims that Defendants breached the job security provisions in the employee handbooks, manuals and documentation.  (Compl. ¶¶ 30-31).  A breach of contract claim requires (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff.  *Ramada Worldwide, Inc. v. Steve Young Kim,* No. 09–4534, 2010 WL

---

[7] To the extent that Plaintiff claims that the Union violated its duty of fair representation, the Court addresses that claim in Part V, *infra.*

2879611 at *3 (D.N.J. July 15, 2010) (citing *AT & T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp. 2d 367, 370 (D.N.J.1999)).  Assuming that Plaintiff claims that the Union breached the collective bargaining agreement between the Union and Bay State, he has not asserted any facts that support this claim.  He has not alleged that he attempted to file a grievance or to seek recompense pursuant to the collective bargaining agreement.  Furthermore, while Plaintiff claims that the Union did not fully represent him, (*see* Iwanicki Aff. 5), it appears that the Union did in fact advocate on behalf of Plaintiff on three separate occasions, (*see* Rodriguez Aff. ¶¶ 5-7).  Therefore, the Court finds that Plaintiff has failed to sufficiently plead a claim for breach of contract.

### E.  Count Six- Hostile Work Environment

In Count Six, Plaintiff claims he was harassed due to his national origin and his alleged disability.  He claims that Defendants "failed to take measures to stop it."  (Compl. ¶ 45).  However, Plaintiff failed to allege any specific harassing or offensive conduct on behalf of the Union whatsoever.  Therefore, for this reason and those elaborated in Part III.B.4, *supra*, this claim is dismissed.

### F.  Count Seven- Violation of the Union's Duty of Fair Representation

In Count Seven, Plaintiff claims that the Union conducted "itself in an arbitrary, discriminatory, and or bad faith manner toward plaintiff who is a member of the collective bargaining unit."  (Compl. ¶ 52).  Plaintiff cites *Brown v. Coll. Of Med. &* Dentistry, 167 N.J. super 532 (N.J. super. Ct. Law Div. 1979), which addresses the statute of limitations for an alleged breach of duty to fairly represent a union member.  Because several of Plaintiff's claims may be construed as claims that the Union violated its duty of fair representation, the Court addresses that claim separately in Part V, *infra*.

### G.  Counts Eight and Nine - Conspiracy

In Counts Eight and Nine, Plaintiff claims that Defendants conspired to commit a tort against him or to injure him.  (Compl. ¶¶ 56-67).  As discussed in Part III.B.5, Plaintiff has not provided any support for these allegations.  Therefore, the Court grants the Union's motion to dismiss to these claims.

### H.  Count Ten- Intentional Infliction of Emotional Distress

In Count Ten, Plaintiff claims that Defendants acted intentionally to produce emotional distress in the Plaintiff.  (Compl. ¶¶ 68-74).  However, he has not alleged that the Union committed any intentional or outrageous act.  Therefore, this claim is dismissed.

### I.  Count Eleven- Unlawful Discrimination

In Count Eleven, Plaintiff claims that Defendants discriminated against him based on his national origin and disability by wrongfully reprimanding and discharging him.  (Compl. ¶¶ 75-81).  As previously discussed in Part IV.C, *supra*, the Complaint does not allege that that Union had any part in the decision to reprimand or terminate Plaintiff.

Plaintiff also appears to claim that the Union aided and abetted Bay State in discriminating against him.  (Compl. ¶ 76).  In order to establish a claim for aiding and abetting, the plaintiff must prove: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing.  *Monsen v. Consol. Dressed Beef Co., Inc.,* 579 F.2d 793, 799 (3d Cir. 1978); *Elysian Fed. Savings Bank v. First Interregional Equity Corp.,* 713 F. Supp. 737, 760 (D.N.J. 1989); *Morganroth & Morganroth*, 331 F.3d 406, 414 (denying a motion to dismiss aiding and abetting claims because the complaint provided "numerous allegations of defendants' knowing assistance [with the] fraudulent schemes").

23

Here, Plaintiff has not asserted any claims that the Union gave knowing assistance to Bay State in its alleged wrongful discrimination. Based on the facts stated in the Complaint, it does not appear that the Union played any role in reprimanding or terminating him. Therefore, the Court grants the Union's motion to dismiss this claim.

## V.   THE UNION'S DUTY OF FAIR REPRESENTATION

As best as can be understood from Plaintiff's Complaint, he claims that the Union violated its duty of fair representation to him as a member of the Union. (See Compl. ¶¶ 2, 4, 7). In order to support a claim for unfair representation, a plaintiff must show "actual bad faith or arbitrary conduct" on the part of the union. *Wright v. Boeing Vertol Co.*, 704 F. Supp. 76, 79 (E.D. Pa. 1989) *aff'd*, 879 f.2d 861 (3d Cir. 1989); *see also Findley v. Jones Motor Fright, Div. Allegheny Corp.*, 639 F.2d 953, 957 (3d Cir. 1981). It is not enough to show that the Union decided not to proceed with a grievance or refused to take a complaint to arbitration. *See Findley*, 639 F.2d 953, 958 (3d Cir. 1981) (holding that the union did not breach its duty of fair representation by failing to call one witness, who said he would not have appeared before the grievance panel, nor by failing to consult with former employee prior to the hearing). A union's actions "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).

Here, Plaintiff appears to claim that the Union erroneously decided not to proceed to arbitration. (Compl. ¶¶ 16-22, 28-33, 51-55). However, Plaintiff himself has provided documentation of Bay State's non-discriminatory reasons for terminating his employment. (*See* Compl. Exs. D & E.)   The e-mails and letters from the plant manager and other coworkers indicate that he committed a serious safety violation, yelled at his supervisor, showed disrespect

24

for his teammates, and failed to comply with the plant's policies and procedures. (Exs. D & E). It appears from the chronology that these actions ultimately led to his suspension. (*Id.*) As such, the Union decided not proceed to arbitration. (Union Br. 9). Moreover, it appears that the Union did in fact grieve Plaintiff's verbal warning in May 2010 and his suspension on December 2, 2010. (Rodriguez Aff. ¶¶ 5, 6). In addition, the Union had a meeting with Plaintiff and his employer Bay State regarding the disciplinary action taken against Plaintiff for a safety violation that occurred on December 31, 2010. (Rodriguez Aff. ¶ 7).

Plaintiff also apparently claims that the Union conspired with his employer in disciplining him and ultimately terminating him. (*See* Compl. ¶ 57). However, in order to support a claim of conspiracy between a union and an employer, a plaintiff must allege that the union itself imposed discipline or terminated an employee. *See Gilmore v. Local 295, Inter'l Brotherhood of Teamsters*, 798 F. Supp. 1030, 1040-41 (S.D.N.Y. 1992). In *Gilmore*, the plaintiff alleged that the Union conspired with his employer by "purposefully failing to give him adequate representation at the arbitration hearings." *Id.* at 1041. He claimed that the union and his employer acted together to punish him for speaking out against racial discrimination, and therefore the union should be liable for his wrongful termination. *Id.* The court dismissed his claims, however, because the union itself did not implement discipline, nor did it fine him, suspend him, or terminate his membership in the union. *Id*; *see also Camporeale v. Airborne Freight Co.,* 732 F. Supp. 358, 365 (E.D.N.Y. 1990), *aff'd* 923 F.2d 842 (2nd Cir. 1990) (holding that the union was not liable for wrongful termination when the union itself did not impose any discipline or terminate the plaintiff's membership in the union after the plaintiff was repeatedly late for work). *But see Gross v. Kennedy,* 183 F.Supp. 750, 755 (S.D.N.Y.1960) (finding the

25

union had itself disciplined the plaintiff when it terminated an employee without affording him due process that was required pursuant to his collective bargaining agreement).

Here, Plaintiff has not alleged any facts indicating that the Union had any control over Bay State's decision to terminate Plaintiff. (*See* Compl.¶¶ 51-55). Plaintiff's Complaint merely sserts that the Union conducted itself "in a[n] arbitrary, discriminatory and or bad faith manner toward Plaintiff who is a member of a collective bargaining unit." (Compl. ¶ 52). Furthermore, in his opposition to the Union's motion, he simply claims that the Union "did not fully, completely and entirely represent [him] when trouble came to [his] door at work, as they should under the collective bargaining agreement." (Iwanicki Aff. ¶5). The Court finds that this is not enough to support a claim against the Union and thus, grants the Union's motion to dismiss.

## VI.   Res Ipsa Loquitur

In his Complaint, Plaintiff attempts to invoke the doctrine of *res ipsa loquitur* for all of his claims. (Compl. ¶ 82). Under New Jersey law, a plaintiff may use *res ipsa loquitur* to prove a negligence claim based on circumstantial evidence. *See Myrlak v. Port Autho.*, 157 N.J. 84, 99 (1999). It allows for an inference of defendant's negligence where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.'" *Id.* (quoting *Bornstein v. Metropolitan Bottling Co.*, 26 N.J. 263, 269 (1958)). Here, Plaintiff has not alleged any claims of negligence such that the doctrine of *res ipsa loquitur* would apply.

## VII.   Conclusion

Based on the reasons set forth above, Defendants' motions to dismiss Plaintiff's Complaint are granted and this matter is administratively terminated. To the extent the

deficiencies in such claims can be cured by way of amendment, Plaintiff is granted thirty days to reinstate this matter and file an Amended Complaint solely for purposes of amending such claims.  To the extent Plaintiff seeks to add any additional claims, a formal motion to amend should be filed in accordance with all applicable local and Federal rules, as well as any scheduling order which may be in place.

An appropriate Order accompanies this Opinion.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

DATED:  December ___, 2011